EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* AMADO EULOGIO PEÑA, acusado y apelante.

Núms. 15167–73.—*Sometidos:* Febrero 1, 1952. *Resueltos:* Marzo 25, 1952.

*Eudaldo Báez García, Baltasar Quiñones Elías* y *Enrique Alcaraz Casablanca,* abogados del apelante; *Hon. Procurador General Víctor Gutiérrez Franquï* y *J. Rivera Barreras, Fiscal del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Convicto por un jurado en cinco causas seguidas en su contra por el delito de ataque para cometer asesinato(1) y sentenciado en cada una de ellas a sufrir de 3 a 15 años de presidio, con trabajos forzados, el acusado apeló.

Alega ahora (1) que el tribunal inferior erró al declarar sin lugar la solicitud de nuevo juicio que presentó, fundada en no haberse dado instrucciones al jurado sobre los delitos de ataque para cometer homicidio, acometimiento grave y acometimiento simple; y (2) que los veredictos rendidos son contrarios a derecho al condenarle, como le condenaron, en cinco delitos por ataque para cometer asesinato.

En los autos no figura la moción de nuevo juicio a que alude el primero de los errores señalados, ni la resolución dictada en respuesta a la misma, no sabiendo nosotros, por ende, los motivos en que se fundó aquélla ni los que tuvo el juez sentenciador para denegarla. Tampoco aparece que el acusado apelara en cada caso de la resolución denegatoria del nuevo juicio interesado. Siendo apelable tal resolución, si no se apela de ella este Tribunal carece de jurisdicción para revisarla. *Pueblo* v. *Zayas Ortiz,* 65 D.P.R. 538, 540 y casos citados.

La cuestión planteada por el segundo de los errores expuestos es nueva en esta jurisdicción. La prueba some-

---

(1) Véanse el artículo 218 del Código Penal y el caso de *Pueblo* v. *Saltari,* 53 D.P.R. 893, 909.

tida por el ministerio público tendió a demostrar que en la tarde del 30 de octubre de 1950 tuvo lugar cierto tiroteo en el barrio Dulces Labios de Mayagüez, con motivo del cual ciertas personas fueron arrestadas; que de la investigación practicada, los fiscales determinaron que era necesario incautarse del automóvil Ford de un tal José Cruzado Ortiz, quien figuraba entre los detenidos, dándose instrucciones a varios miembros de la policía de que salieran hacia la residencia de éste situada en el barrio La Quinta de dicho pueblo en busca del vehículo; que obedeciendo esas instrucciones salieron en un automóvil Pontiac en dirección al sitio indicado cinco miembros de la policía, es decir Ángel W. Jusino, Félix A. Matos, Diego Ortega, Tomás Figueroa y Salvador O. Gregory, yendo los tres primeros en el asiento delantero del vehículo y los dos últimos en el asiento trasero del mismo, siendo Matos y Figueroa policías secretos y los otros tres miembros regulares, debidamente uniformados, de nuestra policía insular, y guiando el vehículo el policía Jusino; que al llegar frente a la casa de Cruzado Ortiz, como a las 3:45 de la madrugada del 31 de octubre, detuvieron el vehículo, que iba con las luces encendidas, y dijeron al acusado, quien se hallaba parado como a ocho o diez pies de distancia y a un ángulo como de cuarenta y cinco grados del vehículo, que levantara las manos; que Peña, quien era conocido por algunos de ellos, inmediatamente sacó una pistola calibre 45 y les hizo tres disparos, vaciándoles uno de los neumáticos delanteros, tumbándole un tapabocina y atravesándole un tapalodo al automóvil de los policías, pero no hiriendo en forma alguna a ninguno de éstos; que los ocupantes del vehículo inmediatamente contestaron el fuego, disparando hacia el acusado, quien entonces se dió a la fuga y se internó en un bosque cercano. El fiscal presentó cinco acusaciones por el delito de ataque para cometer asesinato, o sea, una por cada una de las personas que se hallaban en el automóvil Pontiac al momento en que el apelante hizo los

disparos.(²)    Interpretamos que el segundo error señalado tiene el alcance y efecto de sostener que únicamente ha debido acusársele por un solo delito de esa clase y no por cinco.

La cuestión así planteada ha dado lugar, en casos de esta naturaleza, a un conflicto irreconciliable en la jurisprudencia del continente, pues si bien algunos estados de la Unión sostienen que cuando hay un solo ataque (*assault*), acto o transacción contra varias personas el acusado puede ser procesado tantas veces como personas han sido objeto del ataque, acto o transacción, sin embargo, hay otros que han resuelto que únicamente puede procesarse al transgresor por un solo delito.

El estudio minucioso y detenido que del problema hemos hecho nos convence de que en casos de esta índole la cuestión a ser determinada es si el acto, ataque o transacción del acusado lesionó o no físicamente a otras personas y si para demostrarlo la prueba requerida en cada caso es la misma, o distinta.    Si el ataque hecho por el acusado no produjo lesión física a las varias personas objeto del mismo y si la prueba requerida en cada caso es idéntica, sólo puede procesarse al acusado por un delito.    Por el contrario, si como resultado del mismo ataque, del mismo acto o de la misma transacción varias personas han sido lesionadas, heridas o muertas, entonces pueden presentarse contra el transgresor tantas acusaciones como personas afectadas haya, siempre que la evidencia requerida en cada caso sea distinta—no importa que la diferencia en la prueba sea tan sólo una *scintilla*, digamos, por ejemplo, en relación con el *corpus delicti*—. 45 Harv.L.Rev. 535; 37 id. 912; 20 id. 642; 40 Yale Law Journal 462; 18 Calif. L. Rev. 171, 179; 14 Calif. L. Rev. 133; Dangel, *Criminal Law*, pág. 373, sección 199; Wharton's *Criminal Law*, Vol. 1, 12ª Ed., págs. 531, 537, sección 394; *Piquett* v. *United States*, 81 F.2d 75; *Com-*

---

(²) Es conveniente hacer constar que los cinco casos por ataque para cometer asesinato fueron vistos conjuntamente y sometidos por la misma prueba.

*monwealth* v. *Roby,* 29 Mass. 496; *People* v. *Lagomarsino,* 217 P.2d 124; *State* v. *Corbett,* 109 S. E. 133; *People* v. *Majors,* 65 Cal. 138; *Spannell* v. *State,* 203 S. W. 357; 113 A. L. R. 215 y anotación a la pág. 222; 20 A. L. R. 341.

En relación con el problema que nos ocupa el Tribunal Supremo de la Nación se ha expresado en los siguientes términos: "Esta Corte ha resuelto que la norma (*test*) para determinar si hay identidad de delitos es si se requiere en ellos la misma prueba para sostenerlos. De no requerirse la misma prueba, el hecho de que ambas acusaciones se refieran a la misma transacción y surjan de ella no significa que se ha cometido un solo delito si el estatuto castiga por dos." *Morgan* v. *Devine,* 237 U. S. 632, 59 L. ed. 1153, 1156; *Ebeling* v. *Morgan,* 237 U. S. 625, 59 L. ed. 1151; *Burton* v. *United States,* 202 U. S. 344, 50 L. ed. 1057, 1071 y *Gavieres* v. *United States,* 220 U. S. 338, 55 L. ed. 489, 490.

En el presente caso resulta palmario e incontrovertible que la evidencia ofrecida y requerida para probar la primera de las acusaciones—la presentada en relación con el ataque al policía Ángel W. Jusino—tenía que ser (como lo fué) en todo sentido idéntica a la que se adujera en relación con las presentadas por el ataque cometido contra cada uno de los demás miembros de la policía que se hallaban en el automóvil al momento de hacerse los disparos. Tan es esto así que los cinco casos fueron vistos conjuntamente y sometidos por la misma prueba. De toda la ofrecida no hay un ápice de evidencia que distinga un caso del otro. Bajo las circunstancias, únicamente podía procesarse al acusado por un solo delito de ataque para cometer asesinato. Cf. *Pueblo* v. *Díaz,* 71 D. P.R. 505.

*Debe confirmarse la sentencia apelada en la causa núm. 15,167 y revocarse las dictadas en las números 15,168 al 15,171, ordenándose el archivo y sobreseimiento de las mismas.*