EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN JACA HERNÁNDEZ ET AL., acusados y apelantes.

Números 15601–10.

*Sometido:* 1 de julio de 1954. *Resuelto:* 30 de noviembre de 1954.

*Francisco Hernández Vargas,* abogado de los apelantes; *Hon. Secretario de Justicia José Trías Monge y Rafael L. Ydrach Yordán, Fiscal Auxiliar, Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del Tribunal.

Juan Jaca, Carlos M. Castro Ríos, Ricardo Díaz Díaz, Leonides Díaz Díaz, Tomás López de Victoria, Ismael Díaz Matos, Rafael Molina Centeno, Bernardo Díaz Díaz, Manuel Méndez Gandía, Ricardo Díaz, Jr., alias Dico, Justo Guzmán

Serrano, Saúl Cuevas Rodríguez, Ángel Ramón Díaz y Carlos Feliciano fueron acusados de asesinato en primer grado en cuatro casos y de ataque para cometer asesinato en seis. Las cuatro acusaciones de asesinato así como las seis acusaciones de ataque para cometer asesinato son idénticas con excepción de los nombres de las víctimas. De conformidad con una estipulación de las partes los casos fueron vistos conjuntamente ante jurado. Se declaró culpables a los acusados y se les sentenció a cuatro términos de reclusión perpetua en los casos de asesinato y a seis términos de seis a catorce años en los casos de ataque para cometer asesinato. A solicitud de los acusados consolidamos todos los casos a los fines de apelación.

Los sucesos imputados en las acusaciones formaron parte de los actos de violencia realizados por miembros del Partido Nacionalista de Puerto Rico el 30 de octubre de 1950. Véanse *Guadalupe* v. *Bravo, Alcaide Cárcel,* 71 D.P.R. 975, 980–81; *Pueblo* v. *Burgos,* 75 D.P.R. 551; *Home Ins. Co. of New York* v. *Dávila,* 212 F.2d 731 (C.A. 1, 1954). Las víctimas, miembros del cuerpo de la policía asignados a Arecibo, fueron muertas, heridas o atacadas cuando algunos de los acusados, a tenor con un plan en el cual acordaron varios de los acusados como parte de un intento de derrocar el gobierno por la fuerza en dicha fecha, tratar de apoderarse violentamente del cuartel de la policía de Arecibo y mientras así lo hacían dieron muerte a cuatro policías e hirieron a dos más.

No nos detendremos a discutir los errores primero al cuarto por el motivo de que los mismos son frívolos.(¹) Los

---

(¹) Estos errores eran los siguientes: Primero, el Tribunal Superior carecía de jurisdicción para entender en el caso contra los acusados porque en sustancia el delito que se les imputaba era que el 30 de octubre de 1950 ellos, en compañía de otras personas más, perpetraron una revolución armada contra los Estados Unidos, y tal delito sólo puede ser juzgado ante una corte federal, bien sea civil o marcial. No vemos fin práctico alguno en utilizar el tiempo y la energía de este Tribunal para resolver tan absurda contención. Véase *Pueblo* v. *Burgos,* supra. Segundo, el tribunal sentenciador erróneamente se negó a permitirle al abogado de los acusados que le preguntara en el contrainterrogatorio al Capitán de la Policía de Arecibo si había sido informado del Cuartel General que en Peñuelas se estaban llevando a cabo arrestos en masa. Aparte del hecho de que una

señalamientos quinto, sexto y séptimo se refieren a que la prueba del gobierno—los acusados no ofrecieron ninguna— era insuficiente como cuestión de derecho para sostener las convicciones de Carlos Feliciano, Carlos M. Castro y Leonides Díaz Díaz, respectivamente.

La prueba del Pueblo demostró que un grupo de nacionalistas se reunió en la casa de Ricardo Díaz—uno de los acusados, esposo de Leonides Díaz—donde planearon el ataque al cuartel de la policía de Arecibo como parte del movimiento a llevarse a cabo en toda la Isla de Puerto Rico el 30 de octubre de 1950 para derrocar el gobierno por la fuerza. En apelación, la única prueba en que el Pueblo descansa para conectar a Feliciano, a Castro y a Leonides Díaz con los delitos aquí imputados se sintetiza por el Fiscal de este Tribunal en su alegato como sigue:

"Veamos en primer término el testimonio del testigo de cargo Guillermo Hernández Vega—cómplice de los acusados. Declaró éste ser miembro del partido nacionalista desde el año de 1949; que el viernes 27 de octubre de 1950 y en horas de la tarde visitó la casa residencia de Ricardo Díaz, padre (uno de los acusados) encontrando allí entre otras personas a Leonides Díaz Díaz, los hijos de ésta Jesús y Andrés, Manuel Mena de Jesús e Hipólito Miranda (T.E. pág. 11 pieza 1) ; que luego empezaron a llegar otras personas entre ellas Justo Guzmán Serrano; Ángel Ramón Díaz, Rafael Molina Centeno, Ismael Díaz Matos, Tomás López de Victoria y otros (T.E. páginas 12, 13 y 14) ;

objeción a esta pregunta fué correctamente sostenida por el fundamento de que no había prueba sobre la misma en el interrogatorio directo, la misma era impertinente y de cualquier modo el error, al no permitirla, de haber alguno, no fué perjudicial. Tercero, el tribunal sentenciador no transmitió al jurado la instrucción de que en caso de que tuviesen duda de si los acusados habían cometido asesinato en primer o segundo grado, deberían resolver tal duda a favor de ellos y declararlos culpables de asesinato en segundo grado. El tribunal sentenciador *motu proprio* ordenó que se enmendaran las instrucciones a fin de que demostraran que de hecho había instruído al jurado a ese efecto, y los acusados no hicieron gestión alguna en el tribunal sentenciador para demostrar que, contrario a la memoria del juez, tal instrucción no fué dada. Cuarto, el tribunal sentenciador cometió error en la forma en que hizo el resumen de la evidencia. Los acusados no señalan defecto específico alguno en el resumen y ninguno hemos encontrado nosotros.

que utilizando al testigo López de Victoria valiéndose de una pistola hizo una demostración de cómo defenderse de la policía (T.E. pág. 20).

"Que se trasladaron a un sitio que hay detrás de la casa muy cerca de la cocina conocido por 'El Templo' propiedad también de Ricardo Díaz, padre (T.E. pág. 21) ; que allí pasaron toda la noche hablando de distintas cosas, de que se acercaba el momento de la revuelta y que había que destruir toda oficina que representara el régimen de los Estados Unidos en Puerto Rico, tales como correos, cuartel de la policía y matar a su paso los funcionarios que se opusieran a la independencia de Puerto Rico. (T.E. pág. 30) ; que eso lo hablaban Juan Jaca, Tomás López de Victoria y Ricardo Díaz, hijo, en presencia de todos los demás; que en 'El Templo' había cuatro rifles japoneses, 2 escopetas, una carabina, granadas hechas en latas de cerveza Ebling, 1 ametralladora alemana, una bazooka, unos 'bobby traps', y cuchillos y puñales (T.E. págs. 22, 23, 24, 25, 26 y 27) ; que el sábado 28 de octubre de 1950 lo pasó también en la casa de Ricardo Díaz padre junto con las demás personas (T.E. pág. 31) ; que también el domingo 29 de octubre lo pasó en 'El Templo' y toda la noche también hasta horas de la mañana del lunes 30 de octubre de 1950 en que partieron a realizar el ataque.

"Declara el testigo además que durante esos días fué llegando gente al 'templo' en donde recibían alimentación de Leonides Díaz Díaz quien les llevaba la comida a 'El Templo' (T.E. pág. 32) ; que alrededor del día 30 prepararon bombas Molotov en una casa que se encuentra como a dos hectómetros de distancia de la finca de Ricardo Díaz (T.E. pág. 34) ; y que fueron luego traídas a 'El Templo' (T.E. pág. 36). Declaró el testigo que el acusado Carlos Feliciano llegó a la casa de Ricardo Díaz el domingo 29 por la noche y que Carlos M. Castro el mismo día en horas de la mañana (T.E. pág. 38).

"Refiriéndose específicamente a la participación de los acusados Carlos M. Castro, Carlos Feliciano y Leonides Díaz Díaz en la conspiración, el testigo declara: que Carlos Feliciano, llegó a la casa de Ricardo Díaz, el domingo 29 de octubre en horas de la tarde (T.E. pág. 41) ; que en esa noche hizo guardia frente a la casa de Díaz para evitar que extraños al movimiento libertador fueran a penetrar en 'El Templo' (T.E. 42, 43 y 44) ; que a las palabras del líder Jaca Hernández de que había llegado el momento de la revolución, aceptó (T.E. pág. 45) y que el lunes 30 de octubre de 1950 saliendo de 'El Templo' debidamente

armado abordó una guagua junto a doce compañeros con el propósito de impedir refuerzos de la Guardia Nacional y de la Policía Insular cuando otros seis de sus compañeros de 'El Templo' atacaban al cuartel de policía de Arecibo (T.E. págs. 47, 48 y 49).

"En cuanto a Carlos M. Castro declaró el testigo que este ciudadano llegó el domingo 29 de octubre de 1950 y en horas de la mañana a casa de Ricardo Díaz donde interesó ver y tuvo ocasión de conversar con Juan Jaca Hernández e Ismael Díaz Mattos (T.E. pág. 37, 38 y 39); que en la noche de ese día Carlos M. Castro, al igual que Carlos Feliciano y otros hizo guardia frente a la casa de Ricardo Díaz en evitación de que extraños al movimiento entraran al recinto (T.E. págs. 42 y 43) y que cuando el lunes 30 de octubre Juan Jaca Hernández se dirigía a los reunidos en 'El Templo' arengándoles que había llegado el momento de la revolución Carlos M. Castro le acompañaba (T.E. pág. 46).

"Refiriéndose a Leonides Díaz Díaz dijo el testigo que ésta como la ama de la casa era la persona que les preparaba y les servía las comidas a todos los congregados en 'El Templo' (T.E. pág. 31 y 41) y que aceptó que había llegado el momento de la revolución (T.E. pág. 45).

"La declaración de este testigo Hernández Vega fué corroborada por los testimonios de Epifania Cruz Maldonado quien para el mes de octubre de 1950 era criada en la casa de Ricardo Díaz, Juan Rosario Concepción, Lucas Manuel Reyes, Emilio Olmo Díaz."

Suponemos que el testimonio del cómplice—al efecto de que Feliciano y algunos de los otros salieron de la casa de Díaz en una guagua para impedir que la policía de Arecibo se reforzara cuando se le atacara—era suficiente para conectar a Feliciano con los delitos que se le imputaban, aun cuando Feliciano no estuvo presente cuando se dió muerte o se hirió a las víctimas en Arecibo. Véanse *Pueblo v. Berenguer*, 59 D.P.R. 81; *Pueblo v. Castro*, 75 D.P.R. 672, y casos citados; Dangel, *Criminal Law*, págs. 269–70; Miller, *Criminal Law*, 114; Underhill's *Criminal Evidence*, 4ta. ed., págs. 1401 *et seq.*; 2 Warren, *Homicide*, págs. 519 *et seq.* La dificultad aquí estriba en que no encontramos corroboración de este testimonio en los autos, según lo exige el art. 253, Código de

Enjuiciamiento Criminal, ed. de 1935. Véanse *Pueblo* v. *Portalatín*, 73 D.P.R. 334; *Pueblo* v. *de Jesús*, 73 D.P.R. 752. Ya hemos visto que el Fiscal de este Tribunal en su alegato meramente hace una afirmación general de que el testimonio del cómplice fué corroborado por ciertos testigos sin indicar específicamente evidencia corroborativa alguna. Hemos examinado el testimonio de estos testigos y el resto de los autos y en ellos nada encontramos que corrobore el testimonio del cómplice con respecto a Feliciano.([2]) Por consiguiente la sentencia en cuanto a éste debe revocarse.

■ En relación con Carlos M. Castro y con Leonides Díaz, la prueba—según demuestra el propio resumen del Fiscal—establece a lo sumo que éstos estaban de acuerdo con la proposición general de que el momento de la revolución había llegado. Pero se les imputa a estos acusados el asesinato de cuatro policías y el ataque con intención de asesinar a otros seis. Si la prueba hubiera demostrado que Castro y Leonides Díaz participaron bien en el acuerdo de apoderarse del cuartel de la policía o en alguna conducta con referencia a esto, pudieron correctamente haber sido declarados culpables por el jurado de los delitos que se les imputaban, aun cuando no participaran en el ataque en sí del cuartel. Véanse *Pueblo* v. *Berenguer*, supra; *Pueblo* v. *Castro*, supra; Underhill, supra, págs. 1401 *et seq;* 2 Warren, supra, págs. 519 *et seq.;* Miller, supra, pág. 114; Dangel, supra, págs. 269–70. *Cf. Krulewitch* v. *United States*, 336 U. S. 440, opinión concurrente del Juez Jackson, págs. 445 *et seq.* Pero no hay prueba en los autos de que Castro o Leonides Díaz participaran bien en el plan o en algún acto para llevar éste a efecto. La única prueba en cuanto a ellos—su presencia en la casa de Díaz y su aquiescencia general en el movimiento revolucionario—no cumple con los requisitos necesarios para su convicción. Por tanto, las convicciones de Castro y de Leonides Díaz en los

---

([2]) La única referencia que hemos encontrado sobre Feliciano de algún otro testigo fuera del cómplice es el testimonio de Epifania Cruz, la sirvienta, que dijo que *no* había visto a Feliciano en la casa de Díaz.

casos de asesinato y de ataque para cometer asesinato no pueden subsistir.(³)

■ El octavo señalamiento es que el tribunal sentenciador cometió error al declarar a los acusados convictos de seis delitos de ataque para cometer asesinato, toda vez que la prueba demuestra que sólo dos policías fueron heridos. Según los acusados, bajo la regla establecida en *Pueblo* v. *Peña*, 73 D.P.R. 261, bajo estas circunstancias sólo procedían dos y no seis acusaciones de ataque para cometer asesinato. El caso de *Peña* es distinguible. En él se acusó a un apelante de ataque con intención de cometer asesinato en cuanto a cinco pasajeros de un automóvil, sólo una persona fué herida, y la prueba contra el único acusado en cuanto a todos los pasajeros fué la misma. Aquí tenemos un ataque perpetrado por un grupo de personas con un designio común. Bajo estas circunstancias, las actuaciones de los acusados en aras del designio común son admisibles contra sus coacusados en cuanto a *todos* los delitos que se imputan en este caso, siempre y cuando los autos contengan alguna evidencia independiente que conecte a aquéllos con el designio común. *Pueblo* v. *Castro*, supra, 680; *Pinkerton* v. *United States*, 328 U. S. 640, 647. En consecuencia, contrario a la situación en el caso de *Peña*, la prueba en cuanto al *corpus delicti* es diferente en cada caso: la evidencia con respecto a designio común hizo que las diversas actuaciones de los acusados fueran admisibles contra cada uno, bien estuviera o no envuelto un acusado específico en la actuación directa contra un policía específico. Por tanto el caso de *Peña* no es de aplicación a éste.

Por los motivos ya expuestos, *las sentencias en cuanto a*

---

(³) Escasamente debemos añadir que el hecho de que Leonides Díaz sirviera comidas a los otros acusados en "El Templo" no es suficiente, por sí solo, para demostrar que ella participara en el acuerdo de atacar el cuartel de la policía de Arecibo, trayendo como resultado la muerte y heridas de las víctimas aquí envueltas. De igual forma, el testimonio de que ella condenó la celebración del día de las Naciones Unidas y que cuando se le arrestó ella dijo que para libertar a la patria había que derramar sangre no demuestra que cometiera los delitos de asesinato y ataque para cometer asesinato que se le imputan en este caso.

*Carlos Feliciano, Carlos M. Castro y Leonides Díaz serán re-*
*vocadas y se dictarán nuevas sentencias absolviéndolos. Las*
*sentencias en cuanto al resto de los acusados serán confir-*
*madas.* (⁴)

El Juez Asociado Sr. Ortiz no intervino.

---

(⁴) Indicamos en justicia al juez sentenciador que en ninguna etapa del caso ante el tribunal—bien al cerrar el Pueblo su caso o bien después del veredicto—levantara el abogado de los acusados la cuestión de la insuficiencia de la prueba en cuanto a algunos de los acusados.