### BURL SIMONS V. THE STATE.

No. 21417. Delivered February 19, 1941.
Rehearing Denied April 2, 1941.

The opinion states the case.

*Carney & Carney* and *Tom J. Mays,* all of Atlanta,. for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

This is the second appeal of this case. The opinion in the former case will be found in 139 S. W. (2d) 119, where a succinct statement of facts will be found.

In this trial appellant received a penalty of five years in the penitentiary under a verdict of murder without malice for the killing of Roy Young, an eighteen year old boy. All parties are negroes.

Appellant complains of the court's charge on self-defense wherein the court applies the law to the facts in this case. It is contended that in such application the court required the jury to view the transaction that resulted in the death of deceased as the same appeared to such jury at the time of the trial, whereas the court should have required the jury to have viewed such matter from the appellant's standpoint as such appeared to him at the time of the fatal difficulty.

The charge of the court, when taken as a whole, seems to

us to be susceptible of the construction that the transaction that culminated in the death of the deceased should be viewed by the jury in the light that same appeared to the appellant, it being stated therein that it was not necessary that actual danger be present, but that such danger reasonably appeared to appellant to be present at such time. Again, in the second paragraph of the court's charge it is said that if the acts of deceased, from appellant's knowledge of the character and disposition of the deceased, caused him (appellant) to have a reasonable expectation or fear of death or serious bodily injury, and that acting under such reasonable expectation or fear of death or serious bodily injury, appellant killed the deceased, then the jury should acquit the appellant.

We are not impressed with the contention that such latter portion of the charge deprived the appellant of the right to have these facts viewed from his standpoint alone. We think the jury understood that if this transaction impressed the appellant that he was being assaulted in a dangerous manner by the deceased, then appellant had the right to take the life of the deceased in his own self-defense. We think all the portion of the court's charge on self-defense should be considered together, and no one portion thereof should be expected to contain all the elements of such a proffered defense. It is also shown by a comparison thereof that the court's charge in this cause is practically a copy of the one given in the former trial, which charge was therein approved by this court. 139 S. W. (2d) 119.

After a careful reading of the testimony, and especially that of appellant, we must confess that the testimony raising the issue of self-defense, upon the part of appellant, is difficult to find therein. In its strongest light, from the defense standpoint, it would seem that while certain boys, among them the deceased, were raising some kind of disturbance near appellant's mother's home, he went up there and ordered the boys to keep quiet. Two boys other than the deceased had been fighting. The deceased, so appellant testified, cursed appellant and struck him with a club about six feet long and about two or three inches in thickness. Appellant took this club away from deceased, who said no more, nor did anything further but "was just standing there." Appellant then struck deceased with this club on the right side of the head and crushed his skull, causing his right eye to protrude from the socket, and

from which blow the deceased died. On cross-examination appellant testified:

"The boy had a club when I got there,—he hit me on the shoulder and then I took it away from him and hit him. And he cursed me. I didn't have much trouble taking the stick away from him,—just reached over and got it, and he didn't fight me. He didn't try to do nothing. I could not tell whether he had a knife or gun or anything. Me and him were standing up there talking when I reached and got the stick from him, and I turned my face like this and come around on my left hand side and hit him on the head. I don't know what side it was. I just come around this way, and I guess that killed him. He fell."

Again, appellant testified:

"The boy didn't hit me with his fist after he hit me with the club, didn't touch me, was just standing up there. He was standing up there when I hit him with a club,—and he hit me too. He hit me with a club first, and I took it away from him and hit him. He didn't try to take the club away from me. He was just standing up there straight when I hit him with a club. I don't know what part of the head I hit him on, but I hit him a back handed lick, but I don't know whether it was sufficient to break his skull. It isn't a fact that I had both hands on the club, and drew it over my right shoulder and came down on that boy as he turned to go to Bloomburg. I guess if I burst his skull, I must have hit him hard. I can't explain to the jury how I hit with a back hand stroke on the back of the head, I don't know. I don't know how that happened."

Again he testified on direct examination:

"They had been raising sand up there about 30 or 40 minutes before I went up there, and some of them were cursing. You could hear it all down to my house, about as far as from here to the street from my mother's; and I went on down from my house and went out and told them to quiet down some, but they didn't quiet down. Roy didn't say anything to me at that time. It was about 20 or 30 minutes before I went out there again, and then I told them to get on off and not be disturbing the people around there. They started leaving, and General left on out, and this other boy, he was the one doing all the cursing and raising sand there, he came up there with a stick and hit me with it, and I grabbed the stick out of his hand and hit him. He also cursed me, called me a black son-of-a-

bitch, and said he wasn't going no place. I got the stick I hit him with from him. It was about 4 feet long, one of these little old slabs from a saw mill. I hit him with it, but I sure didn't have any intention in the world of killing him. I was just trying to get him quiet. If he had gone on like I asked him to and quit cursing, I would not have hit him. I had tried before to get him to leave my mothers' place and not disturb the people around there, and they would not leave."

From the testimony thus offered to us it seems that appellant struck the death dealing blow because the deceased refused to leave the premises near the appellant's mother's house and not in his own self-defense. According to all the State's testimony from numerous witnesses, the deceased at the time he was struck was moving away from where appellant was, and was saying nothing and doing nothing evidencing any intention to assault appellant. According to appellant's testimony, the deceased had already cursed him and struck him with this club, but appellant had taken the club away from deceased, and deceased was doing nothing but "just standing there," when appellant struck him a "back-handed" lick which broke the club, and witnesses say "sounded like a pistol shot," which blow caused deceased's death.

Had the jury desired to find that appellant acted in his own necessary self-defense, upon what grounds could they base such defense? There must be some testimony showing such a defense, and under the above quoted testimony we confess that we are at a loss to find the same. Had the jury believed that the deceased had previously cursed and struck appellant, nevertheless he no longer had possession of such club, nor was he either doing or saying anything to evidence an intention of killing or seriously injuring appellant, but, according to appellant's own testimony, the deceased was "just standing there," and was killed not in self-defense, but because upon appellant's order he would not leave the place at which he was standing.

Appellant has many bills of exceptions in the record, the majority relating to special charges refused by the trial court, the major portion of which are on the weight of the testimony and should not have been given.

Appellant's bill of exceptions No. 9 requests a charge on intervening cause. We do not think the facts call for such a charge.

Appellant's bill of exceptions No. 10 relates to a requested charge as to the character of the stick used in the striking of

the deceased, relative to same being not a deadly weapon. In his brief, it is appellant's contention that his right of self-defense rests upon the fact that the deceased had first assaulted him with this same stick and that from such an assault arose appellant's right of self-defense because of the deadly character of such weapon; but it seems that when such weapon was used by the appellant, it lost its deadly characteristics. It is noted that this club was described as being six feet long, from two to three inches wide, and being a green pine slab, and it is shown that it was used by appellant, a man thirty years of age and weighing 187 pounds, on an eighteen year old boy's head. It is our opinion that such would be called a deadly weapon from the mode and manner of its use, and the results obtained therewith.

We think that a witness who had seen the licks struck and heard the impact could be allowed to say whether such lick was an easy one, a back-handed stroke, or a straight hard lick, and we overrule bill No. 13.

We also overrule bill No. 14 which is concerned with the fact that the court asked a witness whether the witness had described the stick that was used in this case. The court qualifies this bill by saying that a witness had told about the striking with this stick and a portion thereof breaking off, and the court, not understanding what the witness had said, asked the witness if he had described the stick, how big around it was,—at which time the witness was asked by the district attorney to describe the stick, which the witness then did. Appellant objected to the court thus asking the witness this question. The court states in his qualification that other witnesses described said stick as well as the appellant in his testimony. We are not impressed with the seriousness of this matter, and no error is shown herein.

Appellant's bill of exceptions No. 15 relates to the testimony of the undertaker relative to the wound on the head of the deceased. The bill is defective in that it does not state the answer of the witness "as to whether or not such wound was made with some sort of an instrument or not." Suffice it to say, it seems that this man who had much experience with the handling of dead bodies and the observing of injuries should be allowed to say whether a wound that crushed the skull and caused the eye to protrude from its socket was made by a blow from some blunt instrument. Again there were other witnesses who testified to actually seeing the blow delivered and

the results thereof, and no objection was registered to such testimony.

We have carefully gone over and considered all bills of exception not specifically written upon and do not think any error is shown therein, and they are overruled.

We find no error herein shown, and the judgment is therefore affirmed.

### ON MOTION FOR REHEARING.

KRUEGER, Judge.

In his motion for a rehearing, appellant contends that in the original opinion in this case we erred in two respects: First, in holding that the court's instruction on the law of self-defense, although not technically correct, would not require a reversal of the judgment because the issue of self-defense was not raised; and second, because the court failed to comply with appellant's request to instruct the jury that if appellant went to the home of his mother for the purpose of quelling a disturbance and to eject the disturbing parties therefrom, he had the right to use such force as appeared to him to be reasonably necessary to accomplish that object.

We do not deem it necessary to again enter upon an extended discussion of the first question presented. There is no testimony in the record which, in our opinion, even meagerly raises the issue of self-defense. Appellant testified that the deceased struck him on the arm with a stick; that he took the stick away from the deceased, who then stood there; that while standing there appellant told deceased to leave and when he failed to do so, appellant struck him. We quote from the appellant's testimony as it appears in the record:

"I was just trying to get him quiet. If he had gone on like I asked him to and quit cursing, I would not have hit him * * * He didn't try to do nothing. I could not tell whether he had a knife or gun or anything."

If appellant struck the deceased while he was standing there doing nothing and that he would not have struck him if he had gone away, then it follows that appellant struck the deceased because he would not leave and not because of any real or apparent danger to himself. Consequently when the court gave appellant any kind of a charge on self-defense, he gave him more than he was entitled to. Of course, had the issue of self-defense been raised by any evidence or by the testi-

mony of some other witness, then appellant, nevertheless, would have been entitled to a proper instruction on the law of self-defense; but such is not the case here.

Appellant was not entitled to the second requested instruction. The disturbance which appellant claims he wanted to quiet did not take place on his premises nor where he lived, but upon the premises of his mother. He had no legal right to make any one leave unless requested to do so by his mother; and according to his testimony, she did not ask him to do so, nor did she complain of the disturbance. If she was satisfied, then certainly he would not have any right to complain. He had no more legal rights there than anyone else. His mother could have made him leave as well as any other person had she so desired.

Believing that the proper disposition of this case was made on the original submission, as reflected by the opinion of this court, the motion for a rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.