EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ ANTONIO NEGRÓN RODRÍGUEZ, acusado y apelante.

Números 15394–395.

*Sometidos:* 6 de noviembre de 1953. *Resueltos:* 30 de diciembre de 1954.

*F. Hernández Vargas,* abogado del apelante; *Hon. Secretario de Justicia José Trías Monge* y *Rafael L. Ydrach Yordán, Fiscal Auxiliar, Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

El día 6 de diciembre de 1950, el señor Fiscal del anterior Tribunal de Distrito de Puerto Rico, Sección de Bayamón, presentó una acusación contra el señor José Antonio Negrón Rodríguez, por un delito de incendio malicioso en segundo grado, en grado de tentativa, (art. 50 en relación con los arts. 398 y 405 del Código Penal de Puerto Rico), cometido de la manera siguiente: porque "el referido acusado José Antonio

Negrón Rodríguez, con anterioridad a la fecha de la presentación de esta acusación, o sea allá en o por *la noche del 31 de octubre y la madrugada del 1ro. de noviembre de 1950*, y en Naranjito, Puerto Rico, que forma parte de la Sección de Bayamón del Tribunal de Distrito de Puerto Rico, voluntaria, ilegal, criminal y maliciosamente intentó pegar fuego al edificio del Hospital Municipal de Naranjito, perteneciente al Municipio de Naranjito, Puerto Rico, con intención de destruir dicho edificio."

La vista de esta causa se celebró el día 11 de abril de 1951, y después de oír la prueba correspondiente, el tribunal declaró al acusado culpable de un delito de tentativa de incendio malicioso en segundo grado, y habiendo el acusado solicitado que se le dictara sentencia en el mismo acto, lo condenó a sufrir una pena de uno a cinco años de presidio con trabajos forzados. No conforme el acusado con la sentencia dictada en su contra, apeló de la misma ante este Tribunal, y después de radicada la transcripción de evidencia aunque pendiente de radicarse el alegato del acusado y apelante, desistió de dicha apelación.

El mismo día 6 de diciembre de 1950, el señor Fiscal del anterior Tribunal de Distrito de Puerto Rico, Sección de Bayamón, presentó otra ocusación contra los señores José Antonio Negrón Rodríguez, Ramón Luis Serrano Torres, Feliciano Pérez Rivera, Alejandro Figueroa Ríos, Inocencio Morales Padilla, Elmer Rivera Nieves, Antonio Nieves Avilés y Eulogio Morales Nieves, por una infracción al art. 12 de la Ley núm. 67 de 13 de mayo de 1934 (pág. 459), tal y como quedó enmendada por la Ley núm. 66 de 9 de mayo de 1936 ((1) pág. 343), cometida de la manera siguiente: "los referidos acusados . . . con anterioridad a la fecha de la presentación de esta acusación, o sea, allá en o por *el día 30 de octubre de 1950, en la Calle Giorgetti* del Municipio de Naranjito, Puerto Rico, que forma parte de la Sección de Bayamón, del Tribunal de Distrito de Puerto Rico, ilegal, voluntaria y criminalmente, y con intención de usarlas para hacer daño corporal y de aterrorizar y asustar personas y hacer daño y

destruir propiedad tenían en su poder y dentro del automóvil guagua OP-48828, 18 cartuchos de dinamita marcados Gelodyn núm. 3, Atlas Explosives, y una bomba conteniendo dinamita, de fabricación doméstica, de cuerpo de hierro y tapón de bronce."

La vista de esta causa se celebró el día 23 de febrero de 1951 ante un tribunal de derecho. Después de recibir la prueba de la acusación, por haberse abstenido el acusado de presentar prueba de defensa, el tribunal lo declaró culpable y le impuso treinta meses de cárcel a ser cumplidos en la Cárcel de Distrito de San Juan, Puerto Rico. No conforme con dicha sentencia, el señor José Antonio Negrón Rodríguez apeló ante este Tribunal, señalando el siguiente error: cometió grave error de derecho el honorable tribunal inferior al declarar culpable al acusado, ahora apelante, de una imputada infracción al art. 12 de la Ley sobre Explosivos, Ley núm. 67 de 13 de mayo de 1934, según ha sido enmendada y sentenciarle a una pena de treinta meses de cárcel.

El mismo día 6 de diciembre de 1950 el señor Fiscal del anterior Tribunal de Distrito de Puerto Rico, Sección de Bayamón, presentó otra acusación contra el señor José Antonio Negrón Rodríguez por otra infracción al art. 12 de la Ley núm. 61 de 13 de mayo de 1934, tal y como quedó enmendada por la Ley núm. 66 de 9 de mayo de 1936, cometida de la manera siguiente: "el referido acusado José Antonio Negrón Rodríguez con anterioridad a la fecha de la presentación de esta acusación, o sea allá por el *31 de octubre de al 1ro. de noviembre de 1950, y en el Bo. Higuillar de Naranjito*, P. R. que forma parte de la Sección de Bayamón, del Tribunal de Distrito de Puerto Rico, ilegal, voluntaria y criminalmente y con intención de usarlas para hacer daño corporal y de aterrorizar y asustar personas y hacer daño y destruir la propiedad, tenía en su poder varios cartuchos de dinamita (explosivos)."

La vista de esta causa se celebró el mismo 23 de febrero de 1951 ante un tribunal de derecho. Después de recibir la

prueba de la acusación por haberse abstenido el acusado de presentar prueba de defensa, el tribunal lo declaró culpable y le impuso cinco años de cárcel. No conforme con dicha sentencia, el señor José Antonio Negrón Rodríguez apeló ante este Tribunal, y al quedar consolidados los dos casos referentes a la posesión de dinamita con fines ilícitos, señaló para ambas causas el mismo único error a que anteriormente nos hemos referido.

La razón principal aducida por la representación del acusado y apelante, en su alegato de defensa, es la siguiente: "que aunque el ministerio Fiscal puede radicar acusaciones o denuncias separadas por cada hecho o serie de hechos que por sí solos establezcan la violación de un estatuto, no lo puede hacer cuando tal hecho o serie de hechos están dentro de un delito mayor como médula o sustancia del mismo, o como elemento determinante del mismo" y el Fiscal ha procedido a acusar por el delito mayor. En otras palabras, habiéndose acusado y condenado al señor José Antonio Negrón Rodríguez por un delito de tentativa de incendio malicioso en segundo grado, a cumplir una pena de uno a cinco años de presidio, no puede ser acusado y condenado por un delito de poseer dinamita con el fin de causar daño corporal o destruir propiedad física, a cumplir una pena de treinta meses de cárcel.

La ley envuelta en este caso, es el art. 50 del Código Penal de Puerto Rico, que dispone: "a todo el que intentare cometer un delito sin lograr realizarlo, o fuere impedido o interceptado en la perpetración del mismo y la ley no hubiere señalado la pena correspondiente a tal tentativa se le castigará en la forma expresada a continuación: (1) si el delito frustrado aparejare pena de presidio por cinco años o más, o de cárcel, se impondrá al culpable de intentarlo, pena de reclusión en presidio o cárcel, según fuere el caso, por un término que no excederá de la mitad del máximo de prisión impusta al convicto del delito así intentado . . . el art. 398 del Código Penal de Puerto Rico, que dispone: "constituye incendio malicioso el acto voluntario de pegar fuego a un edificio

ajeno con intención de destruirlo"; el art. 405 del Código Penal de Puerto Rico, que dispone: "es incendio malicioso en primer grado el acto de incendiar maliciosamente, de noche, un edificio habitado, en que estuviere alguna persona al tiempo de cometerse"; todos los demás casos de incendio malicioso corresponden al segundo grado; el art. 12 de la Ley núm. 67 de 13 de mayo de 1934, según quedó enmendada por la Ley núm. 66 de 9 de mayo de 1936, y por la Ley núm. 13 de 9 de enero de 1951 (Leyes 1950–51, pág. 393), que en su versión original, que es la que resulta aplicable a este caso, disponía: "cualquiera persona que tenga en su poder dinamita u otro explosivo químico o sustancia con la intención de usarlo para hacer daño corporal, de aterrorizar, o asustar a cualquiera persona, o de hacer daño o destruir cualquier propiedad o de hacer daño a la misma en cualquiera forma, podrá ser castigada [y] convicta que fuere, a pagar una multa de no menos de ciento cincuenta (150) dólares ni más de tres mil (3,000) dólares o con cárcel y trabajos forzados por un término de no menos de seis meses ni más de cinco años."

Hemos examinado cuidadosamente la transcripción de evidencia, tanto en la apelación desistida que se refiere a la condena de tentativa de incendio malicioso en segundo grado, como la transcripción de evidencia conjunta, que se refiere a las dos condenas por el art. 12 de la Ley núm. 67 de 13 de mayo de 1934, según enmendada y ambas son suficientes en derecho para sostener las tres condenas impuestas al acusado y apelante. En cuanto a la tentativa de incendio malicioso en segundo grado, cometido en alguna hora entre el día 31 de octubre de 1950 y el día 1ro. de noviembre de 1950, el mismo resulta totalmente independiente de la posesión de la dinamita para fines ilícitos cometido por el acusado el día 30 de octubre de 1950. Como cuestión de hecho en el caso que se le imputa como cometido el día 30 de octubre de 1950, la policía se apoderó del maletín donde el acusado la condujo hasta el pueblo, el mismo día 30 de octubre, y por lo tanto, no pudo usarse para incendiar el Hospital Municipal de Naranjito. Ahora

bien, hay otro caso, consolidado para los fines de esta apelación con el anterior, donde se le imputó al acusado y apelante haber estado en posesión de cierta cantidad de dinamita el día 31 de octubre de 1950, y la prueba presentada por el Fiscal señor Víctor M. Sánchez Fernández demostró que en este segundo caso la dinamita se usó para intentar el incendio del Hospital Municipal de Naranjito.

Es en cuanto a este segundo caso de infracción al art. 12 de la Ley núm. 67 de 13 de mayo de 1934, cometido entre el día 31 de octubre y el día 1ro. de noviembre de 1950, que podremos considerar si el delito de poseer dinamita con fines ilícitos quedó confundido con el delito mayor de tentativa de incendio malicioso en segundo grado. Lo primero que debemos dejar establecido es si el delito menor, en este caso, la infracción al art. 12 de la Ley núm. 67 de 13 de mayo de 1934, es necesariamente un ingrediente, o sea, es por naturaleza indivisible del delito mayor, en este caso, la tentativa de incendio malicioso en segundo grado.

Un delito menor por su naturaleza puede estar comprendido dentro de otro mayor cuando la única diferencia que existe entre uno y otro son los agravantes determinados por ley, o sea el primer delito resulta ser un ingrediente del otro que se supone comprendido. El comentarista Francis Wharton, 1 Wharton's *Criminal Law* 50, (Co-operative Publishing Company de 1932), toma como ejemplo las modalidades de agresión que van desde el acometimiento hasta el asesinato para demostrar el desenvolvimiento del proceso de agravación: "surge frecuentemente la duda de si cierta ofensa es divisible; en otras palabras, si es suceptible de ser dividida en dos o más delitos, cada uno suficiente para ser ventilado en un procedimiento criminal distinto. La primera serie de casos en este sentido, que debemos comentar es aquella donde se considera, que una ofensa puede ser un ingrediente de otra: un acometimiento dentro de un acometimiento y agresión, un homicidio dentro de un asesinato o un hurto dentro de un escalamiento. Varias de estas modalidades concéntricas pueden

producirse sucesivamente. El caso de un acometimiento acompañado de una agresión puede resultar en un homicidio o en un asesinato. Añádase el golpe al acometimiento y se convertirá en acometimiento y agresión; añádase la muerte al acometimiento y agresión y se convertirá en homicidio; añádase la malicia premeditada al homicidio y se convertirá en asesinato. Por el contrario, elimínese del asesinato la malicia premeditada y se convertirá en homicidio; elimínese del homicidio la muerte del asaltado y el delito se convertirá en acometimiento y agresión; elimínese la agresión y el caso será uno de acometimiento. Este progresivo descarte de agravantes, es la función encomendada a los jueces de hechos en todos los casos donde se les somete una ofensa en que puede haber otra envuelta.''

Como se ve, para que pueda producirse la confusión de un delito menor en un delito mayor, tanto el uno como el otro, tiene que estar centrado en torno a un hecho delictivo común suceptible de ser agravado o aminorado de acuerdo con la concurrencia de determinadas circunstancias. Si se trata de distintos hechos delictivos que pueden subsistir independientemente del hecho delictivo común, estamos frente a una ofensa suceptible de ser dividida en dos o más delitos.

No es difícil concluir que la posesión de dinamita para fines ilícitos, no se encuentra por su naturaleza intrínseca comprendido dentro del delito de incendio malicioso. Cada uno de ellos puede producirse independiente del otro. Ninguno de ellos constituye un agravante del otro ni resulta necesariamente un ingrediente del otro. Como cuestión de hecho, la dinamita en este caso no es otra cosa que un instrumento para la comisión de un delito, lo mismo que un revólver resulta un instrumento en un asesinato cometido con arma de fuego. Si la ley hubiera creado una modalidad específica para los incendios perpetrados con dinamita, quizás estaríamos ante un problema distinto. Pero los grados de agravación en el incendio malicioso se miden por la habitabilidad de la estructura incendiada o por la hora de su comisión, y no

por los instrumentos empleados para producir tal incendio. Siendo totalmente distintos los delitos, y existiendo diferentes penas para castigar su comisión, el Estado puede presentar una acusación independiente y separada, tanto por el delito de posesión de. dinamita para fines ilícitos como por el de incendio malicioso.

██ Aunque lo que se alega expresamente es la existencia de una confusión (*merger*) de un delito menor dentro de un delito mayor, en el curso de su argumentación, la representación del acusado y apelante trata de convencernos que estamos frente a un delito continuo. Interpretando la Ley núm. 53 de 10 de junio de 1948, definimos el delito continuo como "una transacción o serie de actos continuos puestos en movimiento por un solo impulso y operados por una fuerza no intermitente, no importa cuán largo sea el tiempo que pueda ocupar": *Pueblo* v. *Burgos*, 75 D.P.R. 551, (*Pérez Pimentel*), (1953), cita precisa a las págs. 568 y 569, donde se resuelve que en casos de delitos continuos, lo que se castiga es una conducta continuada (*course of conduct*) y no los actos específicos cometidos en obediencia a esa norma de conducta. Lo que pretendió el Estado en el caso de Burgos, fué penalizar separadamente el mismo acto cometido por la misma persona en distintas fechas con el propósito de organizar un grupo y constituir una asamblea de personas para lograr un movimiento separatista, encaminado a conseguir la separación de Puerto Rico de los Estados Unidos por medio de la fuerza y la violencia, que culminó en una revuelta armada. contra el gobierno establecido. Como se trataba de un delito de prédica, es indudable que había que analizar todas y cada una de las actuaciones de los acusados para ver si todas, o una porción de ellas estaban comprendidas dentro de la práctica proscrita por la ley; véase además *Pueblo* v. *Reynolds et al.*, ante pág. 446.

Pero aquí no se trata de un delito potencial de práctica revolucionaria, que necesita de la intención común de una sucesión de eventos separados en tiempo o de la concatenación.

de una serie de hechos potencialmente delictivos cometidos en distintos tiempos, sino de un delito consumado, suficiente por sí mismo, para constituir un delito público. En este caso el carácter de continuidad hay que establecerlo de una forma distinta. Cuando los hechos incriminatorios suceden rápidamente, uno detrás del otro, en un mismo sitio, siguiendo la teoría del solo impulso, o mejor dicho, de la intención criminal única, sólo se puede presentar una sola acusación por todos los delitos cometidos en un solo impulso o dentro de la intención criminal única. Para ello sería necesario asimismo que todos los delitos cometidos dentro del solo impulso pudieran establecerse por la misma prueba: *Pueblo* v. *Peña*, 73 D.P.R. 261 (*Marrero*), cita precisa a la pág. 264. Pero si los hechos incriminatorios se suceden con el suficiente trancurso de tiempo para que cada uno de ellos sea el resultado de una intención criminal distinta, se puede presentar una acusación por cada uno de ellos: Wharton's *Criminal Pleading and Practice* 346 (novena ed. de Kay and Brother de 1889). En este caso, la evidencia es clara, que cada uno de los hechos delictivos, se planeó dentro de un margen de tiempo razonable para que podamos inferir de ellos una intención criminal distinta dentro de la teoría del solo impulso.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Sifre está conforme con el resultado.