EL PUEBLO DE PUERTO RICO, denunciante y apelado, *v.* ELADIO RODRÍGUEZ OCAÑA, acusado y apelante.

*Número:* CR-62-274        *Resuelto:* 9 de mayo de 1963

*Santos Sánchez Lorenzi,* abogado designado por el Tribunal para ofrecer asistencia legal al acusado en apelación; *Rodolfo Cruz Contreras, Procurador General Interino,* y *Peter Ortiz, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

Eladio Rodríguez Ocaña fue acusado de un delito de mutilación porque el 7 de agosto de 1961, en el pueblo de Utuado, Puerto Rico, acometió y agredió con un palo de 24 pulgadas de largo a Emilio Pagán Rodríguez, infiriéndole

una herida contusa de aproximadamente dos y media pulgadas de largo en la región frontal, que según la acusación, le desfiguraba la apariencia de su rostro. La causa se vio ante un Tribunal de derecho, y el Juez, después de observar detenidamente la débil y reducida cicatriz, llegó a la conclusión, que no se trataba de un caso de mutilación y sí de acometimiento y agresión grave y lo sentenció por este último delito.

En su apelación ante este Tribunal el acusado señala siete errores. De los dos primeros se puede disponer conjuntamente; uno se refiere al error de permitirle al Lic. Muñoz Ramos asumir la defensa del acusado sin estar debidamente relacionado con el caso y el otro al no advertirle la ilustrada Sala sentenciadora al acusado de su derecho a ser juzgado por jurado. El primer error es completamente frívolo por haber declarado el propio acusado que habló con su abogado—un abogado particular y no de oficio—antes del juicio, haber sido atendido por dicho abogado con interés, que confiaba en su abogado y no necesitaba ninguna otra asistencia profesional; el segundo, es completamente injusto, según lo demuestra el siguiente extracto—(T.E. págs. 3–4)—de la transcripción de evidencia:

"Hon. Juez: Así las cosas él, a nombre suyo, pide a la corte que se le vea el juicio por tribunal de derecho porque usted quiere renunciar y renuncia al Jurado. ¿Esa es su voluntad?
Sr. Acusado: Si, Señor.
Hon. Juez: Usted sabe lo que es Jurado?
Sr. Acusado: Si, señor. Entiendo un poco.
Hon. Juez: Para mayor abundamiento, el Jurado es un tribunal compuesto de doce personas, damas y caballeros del distrito, y a nuestro entender todo acusado tiene más ventaja viendo su caso por Jurado que por tribunal de derecho, y es obvio decir que estas doce personas son doce conciencias, doce opiniones. ¿Ha entendido?
Sr. Acusado: Sí, señor.

Hon. Juez: Nadie lo ha amenazado para que usted renuncie al Jurado?

Sr. Acusado: No, señor.

Hon. Juez: Ni le han ofrecido nada a cambio de que vea el caso por tribunal de derecho porque el Juez es lo más suave y liberal?—No, señor. [*Sic*].

Sr. Acusado: No, señor.

Hon. Juez: Que prosiga entonces por tribunal de derecho. Léase la acusación."

■ En cuanto al tercer error, relacionado con el carácter mortífero del instrumento de agresión—en este caso un "palo" utilizado como garrote—el acusado alega que tal pedazo de madera no constituye un arma mortífera *per se*, y por lo tanto, cualquier herida ocasionada por tal pedazo de madera no puede considerarse como una herida inferida por arma mortífera dentro de un acometimiento grave. Estamos conformes que un "palo" no constituye un arma mortífera *per se* cuando se utiliza dentro del uso común y ordinario en que se emplea la madera, como una tranca, un bate atlético, un travesaño, la pata de una mesa. Pero cuando se utiliza como un instrumento de agresión, capaz de inferir grave daño corporal, puede convertirse en un arma mortífera: *Simons* v. *State*, 149 S.W.2d 103 (Graves) (1941), cita precisa a las págs. 106–107; *Commonwealth* v. *Prenni*, 55 A.2d 532 (Stearne) (1947), cita precisa a la pág. 533; *Wisniewski* v. *State*, 138 A.2d 333 (Bramhall) (1957), cita precisa a la pág. 342.

■ El cuarto error le atribuye a la ilustrada Sala sentenciadora dictar una sentencia no sostenida por la prueba; el quinto error haber hecho el ilustrado Juez sentenciador algunos comentarios desfavorables en cuanto al oficio o empleo del único testigo de la defensa. El cuarto error se refiere a no haberle dado crédito el Juez a una proposición de defensa propia presentada por la prueba del acusado no contradicha por la prueba de la acusación. Ciertamente, los efectos de la

prueba forman parte de la potestad judicial. Como siempre, hay dos versiones de los hechos y la ilustrada Sala sentenciadora le dio crédito a una y rechazó la otra. Los comentarios a los que se refiere el quinto error, podrían haber sido lesivos ante un jurado, pero no en un caso visto por Tribunal de derecho.

El sexto error está basado en la teoría que no puede considerarse incluido dentro de un delito de mutilación el de acometimiento y agresión con circunstancias agravantes. Hubo un momento en que se creyó que una cuchillada en la mejilla de un soldado del Rey constituía una ofensa grave a la majestad procesional de la Corona; sin embargo, los estudiantes de la Universidad de Heidelberg, tenían a honra lucir una mejilla acuchillada, siguiendo una antigua costumbre del fuero heróico de los institutos medioevales. Históricamente considerado, el delito de mutilación no es otra cosa que una modalidad cosmética del delito de inferir grave daño corporal, no importa su curiosa categoría. Siendo esto así, no es difícil concluir que cuando la deformación falla, el delito puede ser reducido a un simple acometimiento y agresión grave: *Pueblo* v. *Negrón*, 77 D.P.R. 782 (Belaval) (1954), cita precisa a las págs. 788–789.

En cuanto al séptimo error, relacionado con la penalidad impuesta, creemos que el acusado tiene razón. Este caso, reducido a su justa proporción demuestra una "garata" entre dos porteadores públicos por conseguir un pasajero indeciso, un agredido que muerde, un agresor que le da con un palo en la frente y un policía que tercia en el momento oportuno. No es cuestión que levante otra vez su cabeza repugnante la nefasta hidra taliónica.

*Se modificará la sentencia condenando al acusado a cien dólares de multa, o en su defecto, a un día de cárcel por cada dólar que deje de pagar, sin que exceda de noventa días.*