EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAMÓN GARCÍA, ANTONIO PAGÁN, ISMAEL JIMÉNEZ, ARIEL SERRANO, RAMÓN VIGIO RODRÍGUEZ, acusados y apelantes.

*Número:* CR-69-88     *Resuelto:* 17 de marzo de 1970

*Miguel Ángel Salicrup Cabello,* abogado de los apelantes; *Gilberto Gierbolini, Procurador General,* y *Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Acusados los apelantes del delito de daños maliciosos, y todos menos Ramón García del delito de ataque para cometer asesinato, en concierto y de común acuerdo, el jurado los encontró culpables del primer delito y de acometimiento y agresión grave. Fueron condenados a un año de cárcel en cada caso excepto Vigio Rodríguez quien fue condenado a un año y medio de cárcel. Le suspendieron estas sentencias de acuerdo con la Ley Núm. 259 de 3 de abril de 1946 sobre sentencias suspendidas.

Apuntan en apelación que el tribunal de instancia incidió al declarar culpable (1) a Ramón García, conocido por Ramón Vélez Trinidad, del delito de daños maliciosos cuando la prueba de cargo fue de carácter exculpatorio en cuanto a este apelante; (2) a los otros apelantes del delito de acometimiento y agresión grave cuando de la misma prueba surge que si alguno cometió delito alguno, lo fue de acometimiento y agresión simple, dado el carácter de las heridas; (3) a los apelantes Pagán, Jiménez, Vigio y Serrano por un delito de acometimiento y agresión grave, sin haberse probado fuera de toda duda razonable su culpabilidad; (4) a los apelantes del delito de daños maliciosos sin probarse fuera de toda duda razonable, la comisión de ese delito por los apelantes; (5) al instruir al jurado que Ramón García dijo que "no le hagan daño a él o no lo maten, pero llévense el carro, quemen el carro", palabras que no fueron objeto de prueba.

Los hechos del caso los resume el Procurador General correctamente, así:

"Guillermo Pastrana Rodríguez ocasionalmente se dedicaba a conducir mediante paga uno de los taxis de la American Taxi Cab. Para la fecha de los sucesos ocurridos en este caso cierta unión de operadores de taxis estaba en huelga y montaba piquetes frente a la American Taxi Cab. El día 13 de junio de 1966, por la noche, Pastrana Rodríguez conducía uno de los taxis de dicha Compañía y a eso de las 9:45 P.M. tomó a la pasajera Iris Selenia Flores frente a la Universidad de Puerto Rico en Río Piedras y la condujo, según ella se lo indicara, hasta la Avenida

Eduardo Conde, esquina del Cementerio en Villa Palmeras. Al detenerse en este lugar para dejar a la pasajera llegaron los acusados-apelantes en una guaguita 'pisicorre', la estacionaron frente al taxi, se bajaron y acto seguido todos los acusados-apelantes, excepto Ramón García c/p Ramón Vélez Trinidad, le cayeron a golpes a Pastrana Rodrígez agrediéndole con bates, palos, puños y patadas. Así lo metieron en la parte de atrás del taxi y lo condujeron en éste hasta el sector de Isla Verde, seguidos por algunos de los acusados-apelantes en la guaguita 'pisicorre'. En aquel sector le echaron gasolina al taxi, le prendieron fuego destruyéndolo totalmente, y después de darle una segunda golpiza a Pastrana Rodríguez le dejaron allí en estado inconsciente. Este último tuvo que permanecer recluido durante tres días en el Hospital Universitario y más de un mes en el Professional Building bajo el Fondo del Seguro del Estado."

1-5. Consideraremos conjuntamente el primero y el último apuntamiento pues se refieren al apelante Ramón García.

Arguye el apelante que la culpabilidad de este apelante de daños maliciosos es improcedente porque la prueba demostró que no estaba presente cuando los demás apelantes quemaron el vehículo en el sector de Isla Verde.

También arguye que el juez sentenciador hizo referencia equivocada al dicho de este apelante cuando ocurrió el primer encuentro del perjudicado Guillermo Pastrana y los apelantes en la avenida Eduardo Conde, esquina El Cementerio. El juez de instancia instruyó al jurado que el apelante dijo a los otros que "no le hagan daño a él o no lo maten, pero llévense el carro, quemen el carro, destruyan el carro", cuando el testimonio de Pastrana en contrainterrogatorio, fue al efecto de que el apelante dijo "llévense el carro y no le den a él", que tal instrucción perjudicó grandemente al apelante y a su derecho a un juicio justo ya que no fueron objeto de prueba durante el juicio.

Es cierto que Pastrana testificó que García no se encontraba entre los apelantes cuando su vehículo fue regado con gasolina e incendiado en Isla Verde. Pero no es menos cierto que Pastrana testificó que con anterioridad a los sucesos en

la avenida Eduardo Conde él conocía a los apelantes porque iban "a hacer huelgas, a montar piquetes"; al establecimiento de su patrono Rafael Cerra, dueño de una flota de taxis, uno de los cuales Pastrana conducía en la noche de los hechos que motivan esta causa; que allí "claro que los veía y los conozco a todos"; que "casi siempre estaban juntos . . . . Imagínese cuando andaban en una guagua juntos"; que cuando Pastrana paró el taxi para dejar salir a la pasajera Iris Selenia Flores, en la avenida Eduardo Conde, todos los apelantes se bajaron de una guagua que pararon frente al taxi y le cayeron a palos, excepto García, quien poco después le dijo a los otros, según el testimonio de Pastrana "llévense el carro y no le den a él" que García no participó en la golpiza de Pastrana y no acompañó a los otros apelantes.

Se infiere de la prueba que la gasolina usada para quemar el taxi que conducía Pastrana fue llevada en la guagua en que iban los apelantes pues tan pronto los apelantes aprehendieron a Pastrana en la avenida Eduardo Conde, condujeron su taxi seguido de la referida guagua a una pasaje solitario en Isla Verde y luego de alejar a Pastrana del taxi el apelante Pagán gritó "traigan gasolina" y entonces todos ellos, menos uno, "estaban regando la gasolina en latas y galones también a todo el taxi." Necesariamente la gasolina en cuestión tuvo que ser transportada allí en la guagua en que iban los apelantes y sin duda dicho material estaba en la guagua cuando García llegó en ella a la avenida Eduardo Conde donde se bajó con los demás apelantes para acercarse al taxi conducido por Pastrana con el objeto de apalear y apresar a éste.

■ Nos parece evidente de lo expuesto que las actuaciones de los apelantes obedecían a un plan previamente concertado por ellos en el cual García participó al extremo de quedar conectado con el delito de daños maliciosos aunque no estuviera físicamente presente. Código Penal, Art. 36 (33 L.P.R.A. sec. 82); *Pueblo* v. *Aponte González*, 83 D.P.R. 511,

519–520 (1961); *Pueblo* v. *Méndez*, 39 D.P.R. 930, 932 (1929); *Pueblo* v. *Paz*, 12 D.P.R. 99, 108 (1907).

■ En cuanto a error en las instrucciones al jurado con respecto a lo que dijo García durante el apresamiento de Pastrana en la avenida Eduardo Conde, no creemos que lesionó derechos sustanciales del apelante. Dicha instrucción fue la siguiente:

"... En este caso, por ejemplo, la prueba demuestra que uno de los acusados, que es Ramón García, conocido por Ramón Vélez Trinidad, que está acusado de Daños Maliciosos, la prueba demuestra que no estaba presente allá en Isla Verde, donde se alega que ocurrió el delito o que se cometió el delito de Daños Maliciosos, ahora, hay prueba, y ustedes van a determinar si es digna de crédito o no lo es, lo van a pesar en el sentido que este acusado dijo allí en el primero, en los sucesos en la Avenida Eduardo Conde, más o menos, palabras, *de que no le hagan daño a él o no lo maten, pero llévense el carro, destruyan el carro. Si ustedes entienden que eso es cierto, le dan crédito a eso, esa prueba entienden que es cierta más allá de toda duda razonable, esa prueba sería suficiente para conectar a ese acusado con el delito de Daños Maliciosos, aunque no estuviera presente en Isla Verde, como la prueba es que no estaba en Isla Verde, que estaba acá en la Avenida Eduardo Conde, pero no estaba en Isla Verde.*" (Énfasis suplido.)

La prueba del referido dicho de García surgió del contrainterrogatorio de Pastrana en forma tan enfática que debió recordarse por el jurado tal y como testificó Pastrana. Además, el remanente de la prueba conectaba a García con la quema del vehículo al extremo de sostener el veredicto de culpabilidad en su contra. La instrucción no fue específica de que García dijo que quemaran el vehículo. Más bien indicó al jurado que García profirió *más o menos palabras* al efecto de que no le hicieran daño a Pastrana y de que se llevasen el carro, lo quemasen, lo destruyesen. Es decir, que, según el juez recordó el testimonio de Pastrana, éste dijo más o menos lo anterior. Inmediatamente el juez sentenciador preguntó a las partes si deseaban algunas instrucciones especiales y *la defensa con-*

*testó que ninguna.* No creemos, por lo tanto, que el jurado fuera tan susceptible, en vista de toda la prueba que desfiló ante sí, que la instrucción con respecto a las palabras que "más o menos" profirió García afectaran su ánimo en tal forma que macularan su veredicto de imparcialidad. *Pueblo* v. *Andrades González*, 83 D.P.R. 849, 859–860 (1961).

El récord demuestra que al terminar sus instrucciones generales al jurado, el juez de instancia volvió a invitar a la representación de las partes a hacer cualquier planteamiento con respecto a las instrucciones. La defensa no levantó entonces como no planteó antes, objeción alguna al comentario equivocado incluido en la instrucción con respecto al dicho de García ni pidió instrucciones para corregirlo. Entendemos, por lo tanto, que la defensa renunció al planteamiento en cuestión. *Pueblo* v. *Maldonado Dipiní*, 96 D.P.R. 897, 903 (1969); *Pueblo* v. *López Jiménez*, 96 D.P.R. 132, 138 (1968); *Pueblo* v. *del Valle*, 91 D.P.R. 174, 179 (1964).

2.—Se arguye que si algún delito se cometió, fue el de acometimiento y agresión simple, "dado el carácter de las heridas."

Las partes estipularon que el doctor que atendió a Pastrana declararía que "estuvo recluido varios días en el hospital y que fue recluido mostrando múltiples golpes en el cuerpo y que tenía una herida en la cabeza y que ninguno de los golpes, incluyendo la herida en la cabeza era de carácter grave, que no mostraba fractura de ningún hueso."

■ Los apelantes, excepto García, fueron objeto de una acusación de ataque para cometer asesinato. El veredicto de acometimiento y agresión grave está comprendido en dicha acusación. Regla 147 de las de Procedimiento Criminal; *Pueblo* v. *Pérez*, 65 D.P.R. 693 (1946).

■ La prueba demostró que Pastrana fue agredido con palos, bates, puños y patadas en la avenida Eduardo Conde y luego conducido al sector de Isla Verde en donde nueva-

mente fue víctima de igual agresión hasta que quedó abandonado allí sangrando e inconsciente, como resultado de lo cual estuvo recluido tres días en un hospital y más de un mes en otro. Como en dichos actos se utilizaron los palos y bates como instrumentos de agresión, los mismos se convirtieron en armas mortíferas. Por lo tanto, la prueba sostiene suficientemente la comisión del delito de acometimiento y agresión grave que dispone el Art. 6 de la Ley de 1904 (33 L.P.R.A. sec. 826, incisos 7, 8, 9). *Pueblo* v. *Rodríguez Ocaña*, 88 D.P.R. 335, 338 (1963).

■ 3.—El apuntamiento de que no se probó fuera de toda duda razonable la culpabilidad de los apelantes Pagán, Jiménez, Vigio y Serrano descansa en que resultaba imposible que Pastrana fuese agredido con bates y palos por tres personas dentro del taxi mientras otros tres lo aguantaban, y en la falta de identificación de los apelantes por parte de Pastrana.

Este apuntamiento es insustancial. Aunque Pastrana testificó en contrainterrogatorio que "Me dieron dentro del carro, sentado"; que metían los palos y los bates hacia dentro del vehículo y "me daban allí mismo . . . lo vi como a tres o cuatro mientras los otros se metían en el carro a aguantarme" y que luego lo metieron en el asiento de atrás del taxi y se lo llevaron, es de suponer que lo sacaron del vehículo y que al hacer esto no dejaron de agredirlo. No es imposible ni increíble que Pastrana fuera agredido con palos y bates desde afuera del carro por tres o cuatro de los apelantes mientras los otros penetraban en el vehículo para aguantarlo, y presumiblemente para forzarlo hacia fuera y luego entrarlo en la parte de atrás del vehículo. La pasajera del taxi testificó que los apelantes se acercaron al taxi al bajarse ella y le empezaron a dar palos a Pastrana mientras éste permanecía sentado en el asiento del guía. Ella no pudo ver más.

La prueba también demuestra que Pastrana conocía a los apelantes desde antes de los sucesos que motivan esta causa.

Los identificó tanto en el examen directo como en contrainterrogatorio con seguridad y aplomo. Dio detalles sobre quiénes le daban, quién condujo el taxi a Isla Verde, quién gritó por la gasolina. Testificó sobre la no participación de García en la agresión y lo que oyó que éste dijo. Luego identificó a cada uno de los apelantes entre una serie de fotografías en la Comisión de Servicio Público.

4.—En apoyo del apuntamiento de que no se probó más allá de toda duda razonable la comisión del delito de daños maliciosos arguyen los apelantes que aunque Pastrana testificó que el apelante Pagán gritó "traigan gasolina . . . . Bueno todo el mundo empieza a cargar gasolina y el resto que estaba en derredor de mi me cayeron a palos . . . . Me dejaron inconsciente"; también testificó que "Tampoco lo vi quién pegó fuego, sé que el carro estaba . . . . Ahora el que le prendió el fósforo a ese carro yo no lo ví"; que estando tan cerca del vehículo incendiado no testificó sobre los detalles de las llamas y el resplandor producido por la alegada quema del automóvil, el ruido que produce un automóvil incendiado y el calor que resulta del incendio.

Concluimos que la prueba sostiene el veredicto de culpabilidad pues el jurado estaba justificado en concluir que los que agredieron a Pastrana y lo llevaron junto con su carro a un paraje solitario de Isla Verde y luego procedieron a regar el taxi con gasolina necesariamente tenían que ser los que le prendieron fuego en ausencia de prueba de que otra persona o personas, fuera del grupo de los apelantes, realizaran esa faena delictuosa.

*En vista de lo expuesto, se confirmarán las sentencias dictadas en este caso en 1ro. de febrero de 1967, por el Tribunal Superior, Sala de San Juan.*

El Señor Juez Presidente y el Juez Asociado Señor Hernández Matos no intervinieron.